UNITED STATES of America by Nicholas deB. KATZENBACH, Attorney General of the United States, Plaintiff,

v.

SCHOOL DISTRICT NUMBER 1, LEXINGTON COUNTY, SOUTH CAROLINA, a public body corporate, Walter P. Rawl, Chairman of the Board of Trustees of School District Number 1, Lexington County, J. Leon Corley, D. F. Shumpert, J. W. Dooley, Mayo Harmon, Tallie F. Rauch and J. H. Keisler, Members of the Board of Trustees of School District Number 1, Lexington County, South Carolina, and H. Odelle Harman, Superintendent of School District Number 1, Lexington County, South Carolina, Defendants.

Civ. A. No. 66-96.

United States District Court
D. South Carolina,
Columbia Division.

July 20, 1966.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., and Harold O. Bradshaw, Department of Justice, Washington, D. C., for plaintiff.

R. Milo Smith, Lexington, S. C., T. H. Rawl, Jr., Lexington, S. C., David W. Robinson, and J. Means McFadden, Columbia, S. C., for defendants.

HEMPHILL, District Judge.

The matter before the court is plaintiff's objections to answering certain of defendant's Rule 33 interrogatories. The nature of the interrogatories and the nature of the objections are a unique product of the time and circumstances of the complaint being sued.

The Attorney General of the United States filed complaint against Lexington County School District Number One charging that Negro pupils of the District were not receiving the equal protection of the laws guaranteed by the Fourteenth Amendment. Paragraph 8 of the Complaint reads as follows: "The defendants, in operating the public school system in Lexington County School District Number 1, do not provide to Negro students educational opportunities which are made available by defendants to white students in said school district."

The Attorney General brings the suit under the provisions of Section 407 of the Civil Rights Act of 1964, 42 U.S.C.A. section 2000c–6 (1964)[1] certifying that:[2]

He has received a complaint in writing signed by a parent of a minor Negro child in Lexington County School District Number 1, alleging in effect that said child is being deprived by the defendants of the equal protection of the laws; that he believes the complaint to be meritorious; that the signer of the complaint is unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief; that the Lexington County School District Number 1 Board of Trustees has been notified of the complaint; that he is satisfied that the Board of Trustees has had a reasonable time to adjust the conditions alleged in the complaint; and that in his judgment, the initiation of this action will materially further the orderly achievement of desegregation in public education.

Section 2000c–6(b) defines the area in which the Attorney General may exercise judgment in determining when the complainant is unable to sue.[3]

The Attorney General may deem a person or persons unable to initiate and maintain appropriate legal proceedings within the meaning of subsection (a) of this section when such person or persons are unable, either directly or through other interested persons or organizations, to bear the expense of the litigation or to obtain effective legal representation; or whenever he is satisfied that the institution of such litigation would jeopardize the personal safety, employment, or economic standing of such person or persons, their families, or their property.

At this juncture the sufficiency of the complaint is not in dispute. The defendants have answered by way of a general denial and have proceeded into the normal discovery processes. The plaintiff has moved successfully for the

---

1. The certificate of the Attorney General attached to the complaint, and paragraph 9 of the complaint, see text accompanying note 2 infra, follow the format of 42 U.S.C.A. § 2000c–6(a) and set forth all the requirements of the statute.

2. Paragraph 9 of the Complaint.

3. 42 U.S.C.A. § 2000c–6(b).

production of records and documents under Federal Rule of Civil Procedure 34. The interrogatories served by the defendants to which the plaintiff presently objects pursue three lines of inquiry: (1) the name or names of the complainants; (2) the nature of their complaints; and, (3) the basis upon which the Attorney General determined that the signer of the written complaint was unable to initiate and maintain suit.

The cases brought to the attention of the court which deal with the statute have come up on motions to dismiss.[4] In United States v. Junction City School District No. 75, 253 F.Supp. 766 (W.D. Ark.1966), the defendants specifically alleged that the certification of the Attorney General was deficient, and that no written complaint had in fact been received. In ruling that the certificate was not reviewable the court held that the certificate met the requirements of the statute and that the Attorney General need not detail all the facts nor disclose the names of those complaining to him.

In this instance, however, no such frontal attack is made. The authority of the Attorney General to bring the suit is not questioned except to the extent that it is controverted by the general denial. Having filed that answer the defendants now maintain that since the United States is already in court, and pressing discovery, that "it is impossible for them to adequately prepare their defense without knowing who is complaining and the nature of the complaint."

The plaintiff contends that the answers sought would be of no avail to the defendants in framing a defense, and submits that there is a clear showing of a Congressional intent that the names are to be forever inviolate. Senator Hum-

phrey, floor manager of the Act, is quoted to serve that contention:

[T]he bill requires the Attorney General to state in his complaint and that in his judgment the persons who complained are unable to initiate or maintain appropriate legal proceedings. These statements by the Attorney General will not be subject to challenge either by the defendants or by the court. *Under no circumstances will the Attorney General be required to reveal the names of the particular complainants.* Cong.Rec. March 30, 1964, p. 6322 (Daily Ed.) (Emphasis added.)

The Report of the House Judiciary Committee punctuates virtually the same explanation to indicate a different context:

As a prerequisite to suit, the Attorney General would be required to certify that the signers of the complaint were "unable to initiate and maintain appropriate legal proceedings" for relief, and that the institution of the action would materially further the public policy favoring the orderly achievement of desegregation in public education. *It is not intended that determinations on which the certification was based should be reviewable.* H.R.Rep. No.914, 88th Con. 1st Sess. 23, 24 (1963) (emphasis added), U.S.Code Congressional and Administrative News 1964, p. 2355.

Clearly the determination and certification by the Attorney General is not intended to be subject to review.

█ The court confirms that the determination is not subject to review and the effort of defendants to look behind that authority through interrogatory number three cannot be sustained.

The determination is, however, limited. It must be based on one or both of

---

4. United States v. Junction City School District No. 75, 253 F.Supp. 766 (W.D. Ark. 1966) (motion to dismiss denied); United States v. Natchez Special Separate School District, No. 1120, (S.D. Miss.1965) (motion to dismiss denied).

In both of the cases cited care was taken by the court to note that the Sixth Amendment right of an accused to be confronted with the witnesses against him is not involved in these civil actions.

but two grounds. The defendants are not wholly in the dark in this respect. The defendants' inquiry as to the names of the complainants and the nature of the complaints poses a very different question. The dilemma is that the defendants maintain that certain information is urgent in the preparation of their defense. If the answers which they seek are within the scope of discovery under the Federal Rules of Civil Procedure the interrogatories are therefore a valid demand. The Rules are to apply to all cases in law and equity (and now admiralty).[5] Nowhere does the Act except these cases from those in which the Rules apply. The Attorney General opposes on the grounds that 1. the grand allegation that equal educational opportunities have been denied is sufficient for the defendants to prepare a defense, and 2. that should the complainants be called upon to testify, their names will be supplied at some indeterminable time at the pleasure of the plaintiff. The court need not show to the counsel in this case the many ways that equal protection could be denied in a dual school system which would fall within the sweep of this complaint, for civil rights litigation has risen to the high art of a legal specialty and counsel for both parties here have demonstrated virtuosity in the field.

The plaintiff maintains that the answers sought would be of no use in preparing a defense.[6] The court does not, unfortunately, possess such welcome powers of clairvoyance. In that lack the quiet voice of common sense warns that fair play may suffer if the wolf is to say what is best for the lamb.

■ The manifest purpose of the section is to provide protection and a means of relief to Negroes or others who are either unable to secure counsel or are dissuaded throug⊦ fear of economic or physical reprisal. The means is by providing that the Attorney General may bring suit acting somewhat in the nature of a guardian ad litem.[7] If the Attorney General based his determination on the contingency that the complainants were unable to secure counsel then that purpose has been satisfied for the parties are in court and the resources of the United States are available to maintain the suit. If the determination was based on the contingency that the suit may have placed the complainant in some "jeopardy" then those fears must now stand greatly diminished for the United States Court is now available for the protection of the complainants. In the substantial body of school cases and others in the State of South Carolina there has been no mention of reprisals. It appears, therefore, that the first purpose of the statute is satisfied, and to hold that the second purpose is not satisfied one must speculate on rather remote eventualities.

■■ Once the question of the authority to bring the suit has been determined the court must face the question of the identity of the complainants and the nature of their complaints. "The basic philosophy of the federal rules is that prior to trial every party to a civil action is entitled to the disclosure of all

---

5. Fed.R.Civ.Proc. 1.

6. Judge Cox in the *Natchez* case, see note 4 supra, added parenthetically that "(the identity of * * * [these undisclosed persons] is unimportant to the issues)." While the legislative branch may enact laws to remedy great wrongs in the abstract, the courts must apply the laws to specific human problems. Although the court in the *Natchez* case may have felt that identity was unimportant to the issues at the time—on motion to dismiss—we cannot agree that identity would be unimportant during preparation for presentation of the case and defense on the merits.

7. It is apparently the intention that the statute allow the Attorney General to bring suit under one of the exceptions of Rule 17(a), which would otherwise require that the action be brought by the real party in interest. Exceptions are made for a guardian, among others, and for the United States whenever a statute provides an action may be brought for the use and benefit of another.

relevant information in the possession of any person, unless the information is privileged. This philosophy is implemented by Rules 26 to 37, which provide a number of procedural devices by which this information is to be obtained * *. The pleadings are now not much emphasized, since the discovery rules provide better means for performing the functions formerly demanded of the pleadings * * *. Rule 26(b) permits discovery of 'the identity and location of persons having knowledge of relevant facts.'" Wright, Discovery, 35 F.R.D. 39 (1963). Rule 33 provides that "Interrogatories may relate to any matters which can be inquired into under Rule 26(b) * * *." Regarding the limitation of preventing discovery of privileged matter it has been said that matter is privileged only in the sense that it would be privileged at trial under the applicable rules of evidence. Wright, Discovery, 35 F.R.D. 39, 45 (1963); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). It further appears to the court that the defendant has the right to be apprised of all issues which have been raised under the complaint that they all may be brought to judgment giving the defendants protection from further, subsequent, and possibly vexatious, litigation. No commentary has been called to the attention of the court where the competing demands of the federal rules have been considered, balanced against any need for secrecy, and denied. Equal protection of the laws extends to the defendants as well as plaintiff. Sharp warning that the balance is in danger of being tipped is given when, as here, serious questions of due process appear. Had there been the unlikely intention that cases such as this were to be exempted from the Rules, the Congress would have seen it drawn expressly into the Act. The stringency of such a measure would have demanded it.

It is the opinion of this court that the plaintiff's objections to answering defendants' interrogatories 1. and 2. are not well founded; are contrary to the spirit of the Rules which govern the litigation; and must therefore be overruled. Plaintiff's objection to answering interrogatory 3. is sustained. It is therefore ordered that plaintiff shall answer as fully as possible interrogatories 1. and 2., but that plaintiff need not divulge the basis upon which the Attorney General's certification was made.

And it is so ordered.